PATRICK J. WHALEN, ESQ. (PW3066)
ATTORNEY AT LAW, LLC
109 South Warren Street
P.O. Box 23653
Trenton, NJ 08608
Tel. 609-393-6970
Fax. 609-393-6971
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| KRISTIN SNEED, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **COMPLAINT AND** |
| | : | **JURY DEMAND** |
| THE STEIDLE FINANCIAL GROUP, LLC; | : | |
| STEIDLE PENSION SOLUTIONS, LLC; | : | |
| STEIDLE BROKERAGE SERVICES, LLC; | : | |
| KEITH STEIDLE; JOHN/JANE DOES 1-10, and | : | |
| XYZ CORPORATIONS 1-10, | : | |
| Defendants. | : | |

_____

Plaintiff, through her attorney, Patrick J. Whalen, Esquire, by way of Complaint against the Defendants, alleges the following:

## I. JURISDICTION

1.     Jurisdiction over Plaintiff's claims is conferred on this Court based on diversity of citizenship, Title 28 U.S.C. §1332.  The amount in controversy exceeds $75,000.00.  Jurisdiction over Plaintiff's claims is also conferred on this Court pursuant to 28 U.S.C. §1331 and the Plaintiff requests the Court to exercise jurisdiction over her pendent State claims pursuant to 28 U.S.C. §1367.

## II. VENUE

2.      Venue is proper within the New Jersey District Court pursuant to 28 U.S.C. 1391(b) based on the fact that the unlawful employment practices alleged below occurred in New Jersey.

## III. RELIEF SOUGHT

3.      This action seeks money damages, punitive and exemplary damages, attorney's fees, costs, and injunctive relief. The amount in controversy exceeds $75,000.00.

## IV. PARTIES

4.      Plaintiff, Kristin Sneed, is a resident of Easton, Pennsylvania, and was employed full time for Defendants, during the years 2014 through November 2016. Prior to this time period, Kristin Sneed had worked part time for the Defendants, intermittently, starting in approximately January 2010. For a short period of time, Kristin had also worked as a babysitter watching Defendant Keith Steidle's child.

5.      Upon information and belief, Defendants, The Steidle Financial Group, LLC, Steidle Pension Services, LLC, and Steidle Brokerage Services, LLC, (hereinafter "The Steidle Corporate Defendants") are domestic businesses organized under the laws of New Jersey, with a principal place of business located at 128 Main Street, Lebanon, New Jersey.

6.      The Steidle Corporate Defendants are and were an "employer" within the meaning of N.J.S.A. §10:5-1.

7.      Upon information and belief, Defendant Keith Steidle is the Principal, Owner, Agent, and Employee of The Steidle Corporate Defendants, and the former direct

Supervisor of Plaintiff, Kristin Sneed.   Defendant Keith Steidle had supervisory or management responsibilities directly pertaining to the Plaintiff and/or otherwise was involved in the sexual harassment and sexually hostile work environment that Plaintiff was subjected to at all times relevant in this Complaint.

8.      Defendants John/Jane Does 1-10 ("John Does") are presently unidentified individuals that were employers of Plaintiff and/or had ownership interest and/or control and/or management interest and/or otherwise were involved in the sexual harassment (i.e., were aware of and had a duty to prevent same) of Plaintiff at all times relevant in this Complaint.   Plaintiff reserves the right to amend the Complaint to include these individuals should their identities be revealed and/or should a factual basis be established in further discovery.

9.      Defendants XYZ Corporations 1-10 ("XYZ") are presently unidentified business entities that were employers of Plaintiff and/or had ownership interest and/or control and/or management interest and/or otherwise were involved in the sexual harassment (i.e., were aware of and had a duty to prevent same) of Plaintiff at times relevant in this Complaint.   Plaintiff reserves the right to amend the Complaint to include these parties should their identities be revealed and/or should a factual basis be established in further discovery.

## V. <u>STATEMENT OF FACTS</u>

10.      In October 2014, Plaintiff Kristin Sneed was hired by Defendants to work full time as a Pension Administrator.   Her job responsibilities and duties included the following:

a) Processing the installation of and transitions of 401(k) Plans;
b) Plan transfers;

     c)   Processing of enrollment forms;
     d)   Handling loan requests and distributions for participants;
     e)   Preparing annual Plan valuations;
     f)   Filing of government forms and Plan documents; and
     g)   Answering phones.

11.    Plaintiff Kristin Sneed worked for Defendants until on or about November 14, 2016.

12.    Throughout her employment, Plaintiff was subjected to sexual harassment and a sexually hostile environment.  The harassment was not limited to the work day, but instead included relentless and persistent communications and coerced social interactions outside of the regular work day.

13.    In addition to the sexual harassment, the work environment was volatile and unpredictable due to Defendant Keith Steidle's bizarre and irrational behavior, which included bullying, threatening, and multiple forms of psychological warfare.

14.    Defendant Keith Steidle's bullying and harassing behavior was almost exclusively targeted at his female employees, including the Plaintiff.

15.    The sexual harassment included inappropriate remarks by Defendant Keith Steidle, improper physical touching, as well as improper and humiliating communications and propositions from Defendant Steidle.   These sexually hostile and harassing communications and propositions took many forms, including but not limited to text messages, photographs, as well as personal cards.

16.    The harassing and hostile comments and conduct engaged in by Defendant Keith Steidle include, but are not limited to, the following:

      (a)    In November 2014, asked Plaintiff to join him and a fellow female co-worker and her sister to go to dinner at the River Grille in Easton, Pennsylvania. Later, Keith proposed the group go to a strip club in Easton known as *Spanky's*.  Keith was heavily intoxicated.  While at the strip club, he gave

$80.00 to Plaintiff and requested she give the money to the strippers. Throughout the evening, Keith was touching Plaintiff on the arms and her back making her extremely uncomfortable. He had arranged for a car, and he directed the car to take the group from the strip club to another bar known as *Pearly Bakers*. Plaintiff had grown very uncomfortable and told him she was leaving. Defendant Keith Steidle grabbed her by the arm and suggested they get a bottle of wine and go back to Plaintiff's apartment. Plaintiff refused and walked away. The next Monday morning at work, Keith apologized to Plaintiff, blaming his behavior on being intoxicated, and promised it would not happen again. Plaintiff needed the job and so she stayed working for the Defendants;

(b)     In mid-December 2014, at the company Christmas Party, Plaintiff was forced to drive home in the same car as Defendant Keith Steidle. During that drive, Keith tried to hold her hand and then put his hand on her leg. Plaintiff was afraid and close to crying - - she did not know what to do to get him to stop while at the same time avoid being fired;

(c)     Shortly after the two above events, Defendant Keith Steidle told Plaintiff not to come into work for the rest of the month. Plaintiff was left stressed out and confused not knowing whether she had a job or not. Eventually, Keith told Plaintiff she could return to work. When she returned, Keith had another employee explain to her that Keith had gotten "mad" at Plaintiff for being friends with an ex-employee on Facebook. Around this same time, Keith bought Plaintiff a necklace from Tiffany's. Keith claimed he bought the same for other employees as well, although that later proved to be untrue. Defendant Keith Steidle was obsessed with and attempting to control the Plaintiff, utilizing his authority in the workplace and her position of financial insecurity.

This pattern of behavior would continue throughout her employment. Whether it was due to her not reciprocating or accepting his sexual advances, or his embarrassment due to his intolerable behavior, Defendant effectively fired and/or unofficially "suspended" Plaintiff numerous times. The timing of this first "firing" or "suspension" certainly connects to the blatant acts of sexual harassment. Subsequent firings and suspensions would occur that would demonstrate that Defendant Keith Steidle was jealous and possessive over the Plaintiff, and did not want her talking or interacting with other people from the Hawk Pointe Golf Club he was affiliated with. (Plaintiff had worked full time at that Golf Club before becoming a full-time employee for the Defendants.)

In fact, one of the reasons Plaintiff, and presumably the other female employees, participated in and agreed to engage in after work events was because if they did not, Keith would make their lives miserable at the office for weeks thereafter. In other words, if she said no to his invitations to socialize, then Keith would retaliate against her with treating her poorly at work, screaming and sometimes this would culminate with yet another "firing" or "suspension". At one point, due to his anger and jealousy, Keith even threatened to no longer pay

for Plaintiff's health insurance.  This bizarre behavior and incredibly hostile work environment went on for over 2 years;

(d)     Throughout the Winter, Spring and Summer of 2015, Keith found numerous reasons to get mad and angry with the Plaintiff.  All of these events were motivated out of personal issues, not work-related problems.  In addition to getting angry over who she talked with and interacted with, Keith was furious with Kristin for not wearing the necklace he had bought her.  He constantly criticized the small necklace pendant she wore; again, it was clear that he was obsessed with Plaintiff;

(e)     In August 2015, Plaintiff went on vacation.  On the first or second day of her trip, on August 15, 2015, Keith sent an email telling Kristin: "*I miss you already*."

(f)     The next month, in September 2015, Keith initially talked to Plaintiff about, and then emailed her a "Marriage Compatibility Calculator";

(g)     In 2015, Keith actually asked Plaintiff to go to Ireland with him. Plaintiff told him she did not think that was appropriate, and he claimed he "understood";

(h)     In April 2016, at Defendant Keith Steidle's request, Plaintiff, along with another female employee, went to Hawk Pointe to take photos of the golf tournament that Keith sets up every year, which is known as the Mallard Cup. The male golfers at the tournament, including Keith, were saying many inappropriate things and acting crudely towards Plaintiff and the other female employee.  Keith was part of the group sexually harassing the women.  Later that evening, Keith apologized.  But then Keith sent a group text message, which included Plaintiff as a recipient, which contained a photo of a stripper squatting over the Mallard Cup trophy while wearing Keith's sweater.   Mr. Steidle apparently thought this was an appropriate form of communication to one of the employees he supervised;

(i)     Throughout the Spring and Summer of 2016, Keith was constantly at Plaintiff's desk - - not to discuss work related issues or tasks.  Instead, he talked about his sexual escapades with women he recently met and even showed her photos the women had sent him, making Plaintiff extremely uncomfortable;

(j)     At one point following a dinner, Keith asked Plaintiff if anything was going on between them.  Plaintiff told him she did not feel that way about him.

(k)     At another point, after playing golf at the club and at the bar, Plaintiff saw an old, male friend.  In the course of her discussion with this friend, she told the friend she loved him for being such a patient and understanding

friend.  This discussion apparently incensed Keith.  The next day at the office, Keith scolded Plaintiff for being so ungrateful and told her she was acting like a "whore" for telling her friend she loved him;

(l)     In June of 2016, Keith was acting even more bizarre and angrier than usual.  He actually told Plaintiff that if she cared about her job she should be taking him out to dinner and for drinks to make up for being such a horrible person.  He warned her that how he felt about her on a personal level would absolutely affect how he felt about her at work, so she had better make sure he liked her;

(m)     During the Summer of 2016, Keith actually mocked and belittled the Plaintiff because of her French ethnicity;

(n)     By early August 2016, Plaintiff could no longer tolerate the situation.  One critical triggering event was the following: At that time (again, early August 2016), Keith gave Plaintiff a hand-written card while at work.  The card reads in part as follows:

"*Dear Kristin,*

*You mean the world to me…These words have been rattling around in my mind for years…I wanted to put my feelings in writing…you are a burning candle in my mind…Who would have known, Kristin, how lucky I am to have you.*"

The next month, in September, Keith actually texted her "F.U.", apparently upset with her for not showing him enough attention about a golf tournament he had been in.  Plaintiff was afraid and distraught as Keith, her Boss, was apparently determined to coerce her into a relationship that she did not want. She realized her only escape would be to get fired or to quit;

(o)     In November 2016, on a Saturday, Keith texted the Plaintiff photos of himself in his yard.

17.     The events throughout August and November 2016, were really too much for the Plaintiff.  Plaintiff could no longer remain employed with the Defendants and could no longer tolerate the constant harassment, advances, bizarre behavior, and retaliatory hostility.   She was forced to quit, rather than continue to be sexually harassed and degraded.  Plaintiff was constructively terminated from her position.

## COUNT I
## VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION
## HOSTILE WORK ENVIRONMENT

18.     Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth fully herein.

19.     As described above, Plaintiff endured ongoing sexual harassment from Defendant Keith Steidle, her direct Supervisor, throughout her employment with the Defendants.  Again, the harassment was not limited to the work day, but instead included relentless and persistent communication and coerced social interactions outside of the regular work day.

20.     The inappropriate and offensive misconduct directed at Plaintiff, by Defendant Keith Steidle, because of her gender, created an abusive and hostile work environment for Plaintiff in violation of the NJLAD.

21.     The actions and conduct of Defendants constitute a violation of the Law Against Discrimination, N.J.S.A 10:5-1, *et. seq.* (LAD).

22.     The demeaning and intimidating conduct of Plaintiff's direct Supervisor, Keith Steidle, was so severe and pervasive as to alter the terms and conditions of Plaintiff's employment and created an abusive and hostile work environment for Kristin Sneed, based on her status as a woman, in violation of LAD.  The misconduct complained of would not have taken place but for the fact that Plaintiff was woman.  In the alternative, Plaintiff's gender was a substantial motivating factor behind the misconduct.

23.     The discrimination and harassment was severe and sufficiently pervasive to make a reasonable female employee believe that the conditions of employment were altered and created a hostile and offensive working environment.  In fact, it was so severe and intimidating that Plaintiff believed she had no choice but to leave her job (i.e., she was constructively terminated.)

24.     Defendants' unwelcome conduct occurred because of Plaintiff's gender, and was such that a reasonable person would have considered it sufficiently severe and/or pervasive to alter the conditions of her employment and create an intimidating, hostile or offensive working environment in express violation of the NJLAD.

25.     Defendants are fully responsible for the hostile work environment created by Plaintiff's Supervisor, the Owner and Principal of the Corporate Defendants, Defendant Keith Steidle because they knew or reasonably should have known of Defendant Steidle's discriminating and hostile conduct and failed to take prompt and adequate remedial action.  Defendant Keith Steidle had absolute authority and discretion over the workplace and work conditions, he held supervisory authority over the Plaintiff, which he exercised, acting within the scope of his employment, causing injury to Plaintiff.  Thus, Defendants' upper management exhibited an actual participation in or willful indifference to the especially outrageous conduct of Defendant Owner Principal Keith Steidle, and thereby deliberately or recklessly disregarded the rights of the Plaintiff and other similarly situated employees to work in an environment free of discrimination and sexual harassment based on gender.  Indeed, Defendant Keith Steidle himself was upper management.

26.     Defendants affirmatively engaged in a pattern of discriminatory conduct so severe and pervasive as to alter terms of Plaintiff's employment and to create a hostile and abusive work environment in violation of LAD, for which each is liable.

27.     Defendants engaged in a pattern of conduct, including discriminatory conduct motivated by Plaintiff's gender.

28.     Defendants aided, abetted, incited, compelled, and coerced the sexual harassment and unlawful employment practices against Plaintiff or attempted to do so, in violation of LAD.

29.     By continuing to engage in a pattern of actions that constitute, facilitate and condone a hostile work environment, based, in substantial part, on Plaintiff's gender, the Defendants, intentionally and with reckless disregard to Plaintiff's civil rights, violated LAD, which prohibits discrimination in employment on the basis of gender.

30.     The LAD specifically prohibits employment discrimination based on gender.  N.J.S.A § 10:5-12.

31.     The LAD was enacted to protect not only the civil rights of individual aggrieved employees but also to protect the public's strong interest in a discrimination-free workplace.

32.     Freedom from discrimination is one of the fundamental principles of our society.  Discrimination based upon gender is particularly repugnant in a society which prides itself on judging each individual by his or her merits.

33.     In this action, Plaintiff claims hostile work environment, sexual harassment, quid pro quo sexual harassment, retaliation and gender discrimination.

34.     Defendants had an obligation to maintain a work environment free of sexual intimidation and harassment.  As a result of Defendants' failure to do so, Defendants created an intolerable and hostile work environment.

35.     By the aforementioned actions and omissions of the Defendants, said Defendants did intentionally, knowingly and willfully discriminate against Plaintiff on the basis of her sex.

36.     As a direct and proximate result of Defendants' actions, Plaintiff suffered and continues to suffer serious mental anguish, psychological and emotional stress, humiliation, physical pain and suffering, bodily injury with physical manifestations, some or all of which may be permanent.  Defendants' misconduct has also had a detrimental impact upon Plaintiff's employment efforts and status.  The injuries, which Plaintiff sustained as a direct and proximate result of the actions of the Defendants, have had a detrimental impact upon Plaintiff's economic status, resulting in a loss of wages.

37.     Ultimately, Plaintiff was wrongfully and constructively terminated as a proximate and or direct result of the hostile work environment, sexual harassment, and sexual discrimination she was experiencing at the workplace, all in violation of the NJLAD.

38.     Plaintiff is now suffering damages, including but not limited to economic loss, physical and emotional stress, pain and suffering, psychological damage, embarrassment and adverse effects upon her daily, personal and social life as a result of Defendants' discriminatory conduct.

## COUNT II
## VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION RETALIATION

39.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

40.     The NJLAD specifically provides that it is an unlawful employment practice to take reprisals against any person that has opposed practices, conduct or acts outlawed by the NJLAD.

41.     Defendant Steidle engaged directly in the sexual harassment of and unlawful threats and retaliation against Plaintiff or attempted to do so, in violation of NJLAD.

42.     Plaintiff was subjected to severe and pervasive discrimination based on her gender, and was subjected to sexually hostile and sexually harassing comments and/or other harassing conduct by Defendant Steidle.

43.     Plaintiff objected to what she reasonably believed was Defendant Keith Steidle's discriminatory actions, words and conduct constituting sexual harassment including his inappropriate and unlawful touching of her.   Plaintiff brought her complaints and concerns directly to Defendants' attention.

44.     Plaintiff was retaliated against because she objected to the inappropriate and unlawful actions of Keith Steidle.

45.     Plaintiff's good faith objections to Defendants resulted in the direct and causally related retaliation set forth herein that caused severe emotional pain, suffering, mental trauma, physical pain and suffering, humiliation and anxiety in express violation of the NJLAD, N.J.S.A. 10:5-12, *et. seq.*, by retaliating against Plaintiff for objecting to

practices and/or acts prohibited by the NJLAD as set forth herein.

46.     At all times relevant to this Complaint, Defendant Steidle acted under the color of his position in the capacity as Plaintiff's direct and indirect Supervisor and under the direction and control of the Steidle Corporate Defendants and within the apparent scope of that authority. The outrageous and egregious actions, conduct, harassment, and discriminatory treatment committed by Defendant Steidle were willful, intentional, wanton, outrageous, reckless, malicious and were made with the intent to injure Plaintiff. Defendants should also be held liable for punitive damages.

47.     As a direct result of her complaints, Plaintiff would be either suspended, sent home, and sometimes even fired, and her job responsibilities were altered and/or removed.   The work environment became intolerable and she was constructively discharged.

48.     In constructively discharging Plaintiff, in retaliation for her objection to what she reasonably believed was discrimination based on her gender, Defendants have intentionally and with reckless disregard to Plaintiff's statutorily protected rights, violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*

49.     Even after her termination, Defendants have continued to retaliate against Plaintiff by making false allegations against her.

50.     Defendants' retaliatory actions and reprisals are a direct and causal result of Plaintiff's exercise of her legally protected rights in opposition to practices or acts outlawed by the NJLAD and are in clear violation of the NJLAD.

51.     The retaliatory acts committed by Defendants were willful, intentional, wanton, evil-minded, outrageous, reckless and malicious and were made with the intent to injure Plaintiff.  As a result, Plaintiff is entitled to punitive damages.

52.     As a direct and causal result of this retaliatory conduct, Plaintiff suffered and continues to suffer substantial loss of income and other pecuniary harm, diminishment of career opportunity, business reputation, loss of esteem, disruption of her personal life, emotional distress, trauma and anxiety and other irreparable harm, pain and suffering.

<u>COUNT III</u>
**VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION-
DISCRIMINATION BASED ON GENDER**

53.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

54.     As extensively detailed herein, Defendants discriminated against Plaintiff due to her gender.

55.     The inappropriate and offensive touching of Plaintiff by Defendant Keith Steidle, because of her gender, created an abusive and hostile work environment for Plaintiff in violation of the NJLAD.

56.     As set forth above, Plaintiff was discriminated against with respect to the terms and conditions of her employment based on her gender.

57.     This discriminatory conduct and her ultimate constructive termination was in express violation of the NJLAD.

58.     The unlawful discrimination and harassment was severe and sufficiently pervasive to make a reasonable person believe that the conditions of employment were altered and created a hostile and offensive working environment.

59.     The demeaning and intimidating conduct of Defendant Keith Steidle, was so severe and pervasive as to alter the terms and conditions of Plaintiff's employment and created an abusive and hostile work environment for Plaintiff, based on her status as a woman, in violation of NJLAD.  The misconduct complained of would not have taken place but for the fact that Plaintiff was a woman.  In the alternative, Plaintiff's gender was a substantial motivating factor behind the misconduct.

60.     At all times relevant to this Complaint, Defendants acted under the color of his/their position and in his/their capacity as Plaintiff's supervisor and within the apparent scope of said authority and individually aided, abetted, incited compelled and/or coerced the performance of the above referenced unlawful practices prohibited by the NJLAD.  Accordingly, Defendant Steidle is individually responsible for these violations of the NJLAD and the Defendant employers are responsible for the actions of these named Defendants and all their employees and the damages sustained by Plaintiff as a result thereof.

61.     The outrageous and egregious actions, conduct, harassment, and discriminatory treatment committed by Defendant Steidle, was willful, intentional, wanton, evil-minded, outrageous, reckless and malicious and were made with the intent to injure Plaintiff.  Thus, Plaintiff is entitled to punitive damages against Defendants.

62.     Defendants had an obligation to maintain a work environment free of sexual intimidation and harassment.   As a result of Defendants' failure to do so, Defendants created an intolerable and hostile work environment.

63.     By the aforementioned actions and omissions of the Defendants, said Defendants did intentionally, knowingly and willfully discriminate against Plaintiff on the basis of her gender.

64.     In changing the terms and conditions of her employment, Defendants have intentionally and with reckless disregard to Plaintiff's statutorily protected rights, violated the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1, et. seq.

65.     As a direct and causal result of this conduct, Plaintiff has suffered and continues to suffer substantial loss of income and other pecuniary harm, diminishment of career opportunity, business reputation, loss of esteem, disruption of her personal life, emotional distress, trauma and anxiety and other irreparable harm, pain and suffering.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants awarding:

a.     Full compensation for back pay, front pay, benefits and other remuneration with interest;

b.     Compensatory damages and punitive damages for violations of the New Jersey Law Against Discrimination;

c.     Reasonable attorney's fees and costs and disbursements in this action;

d.     Prejudgment and post-judgment interest; and

e.     Granting such further relief as the Court deems just.

Respectfully submitted,
PATRICK J. WHALEN, ESQUIRE

Dated:  June 16, 2017

*s/Patrick J. Whalen*
Attorney for Plaintiff

16

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues raised herein.

PATRICK J. WHALEN, ESQUIRE

*s/Patrick J. Whalen*
Attorney for Plaintiff

Dated:  June 16, 2017


## DESIGNATION OF TRIAL COUNSEL

Plaintiff, Kristin Sneed, hereby designates Patrick J. Whalen, Esquire as trial counsel in the above-referenced matter.

PATRICK J. WHALEN, ESQUIRE

*s/Patrick J. Whalen*
Attorney for Plaintiff

Dated:  June 16, 2017

## <u>CERTIFICATION</u>

I hereby certify that the matter in controversy in the within Complaint is not the subject of any other action pending in any other Court or of any arbitration proceeding. No other action or arbitration proceeding regarding this matter is contemplated by Plaintiff.   I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

PATRICK J. WHALEN, ESQUIRE


*s/Patrick J. Whalen*
Attorney for Plaintiff

Dated:  June 16, 2017